**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| THOMAS JACKSON<br>3557 PINE GROVE ROAD<br>FAYETTE, MS 39069, | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| RICHARD MECHANICAL CONTRACTORS,<br>INC.<br>3999 BROADWAY ST.<br>GROVE CITY, OH 43123 | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve Also:**<br>CORPORATION SERVICE<br>COMPANY<br>1160 DUBLIN ROAD, SUITE 400<br>COLUMBUS OH 43215, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

Plaintiff, Thomas Jackson, by and through undersigned counsel, as his Complaint against

Defendant Richard Mechanical Contractors, Inc., states and avers the following:

**PARTIES AND VENUE**

1. Jackson is an employee of Robinson.

2. Jackson worked as an employee for Robinson in Batavia, Clermont County, Ohio.

3. Robinson is a foreign corporation that does business in Batavia, Clermont County, Ohio.

4. Robinson is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et*

   *seq.*

5. Robinson is and, at all times herein, was an employer within the meaning of 42 U.S.C. 2000e-2

   et seq.; 42 U.S.C. 126 § 12101 et seq.; 29 U.S.C § 2601, et seq.

## JURISDICTION & VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Jackson is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

7. All material events alleged in this Complaint occurred in Clermont County, Ohio.

8. This Court has supplemental jurisdiction over Jackson's state law claims pursuant to 28 U.S.C. § 1367 as Jackson's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. On or about March 6, 2026, the EEOC issued a Notice of Right to Sue letter to Jackson regarding Jackson's EEOC Charge. See Exhibit A.

11. Jackson has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(a).

## FACTS

12. Jackson is a former employee of Robinson.

13. Robinson hired Jackson on or about May 2, 2025.

14. Robinson assigned Jackson to work at the construction project located in Batavia, Ohio

15. On or about May 2, 2025, Jackson began his assignment with Robinson at the construction project in Batavia.

16. Robinson controlled the tenure, terms, conditions, and privileges of Jackson's employment.

17. Jackson is an African American man.

2

18. Robinson assigned Jackson to the jobsite in Batavia, Ohio.

19. Jackson performed the job duties of a Fire Watcher.

20. The Batavia jobsite was located approximately eleven hours from Jackson's home in Mississippi.

21. Colton, a Caucasian Foreman employed by Robinson, served as Jackson's direct supervisor.

22. Benjamin, a Caucasian Welder, worked at the Batavia jobsite.

23. Throughout his time at Robinson, Jackson observed that Caucasian employees were treated more favorably than he was treated.

24. Jackson was frequently addressed with less professionalism than Caucasian employees.

25. Jackson was given little communication compared to Caucasian employees.

26. Jackson was spoken to in a profane and aggressive tone.

27. On or around August 3, 2025, Benjamin asked Jackson, "What's your favorite tree to be hung from?" ("Race Discrimination Comment")

28. The Race Discrimination Comment invoked the horrific legacy of lynching in the United States.

29. Manwell, a Mexican Pipe Fitter, witnessed the Race Discrimination Comment.

30. Marquez Stampley, an African American Fire Watcher, witnessed the Race Discrimination Comment.

31. Terrell Smith, an African American Fire Watcher, witnessed the Race Discrimination Comment.

32. On or around August 9, 2025, Colton stated if he had any African American in his DNA, he would kill himself. ("Second Race Discrimination Comment")

33. Benjamin witnessed the Second Race Discrimination Comment.

34.  Manwell witnessed the Second Race Discrimination Comment.

35.  Stampley witnessed the Second Race Discrimination Comment.

36.  Smith witnessed the Second Race Discrimination Comment.

37.  On or around August 9, 2025, Colton stated that if his daughter became pregnant by a Black man, he would accept the baby but not the relationship. ("Third Race Discrimination Comment")

38.  Benjamin witnessed the Third Race Discrimination Comment.

39.  Manwell witnessed the Third Race Discrimination Comment.

40.  Stampley witnessed the Third Race Discrimination Comment.

41.  Smith witnessed the Third Race Discrimination Comment.

42. Jackson recorded Colton's racially offensive jokes and comments.

43.  Jackson recorded the conduct due to concerns for his safety.

44.  Jackson recorded the conduct to document the treatment he was receiving.

45. In on about August 2025, Jackson took the Discrimination Complaint to a safety officer.

46. After Jackson informed the safety officer, they both informed Human Resources.

47. Instead of investigating Jackson's Discrimination Complaint, Robinson removed the safety officer who assisted Jackson in making the Discrimination Complaint from the jobsite.

48. Following the safety officer's removal, the racial comments and conduct continued.

49.  Following the safety officer's removal, the racial comments and conduct appeared to escalate.

50.  Jackson again recorded the conduct out of concern for his safety after the safety officer's removal.

51. In or about August, 2025, Jackson filed a complaint regarding racially hostile conduct on the Batavia jobsite. ("Discrimination Complaint")

52. Robinson has a policy against discrimination ("Anti-discrimination Policy").

53. Robinson's Anti-discrimination Policy precludes retaliation against employees who complain about anti-discrimination.

54. Alternatively, retaliation against employees who complain about anti-discrimination is permitted by Robinson.

55. Robinson's Anti-discrimination Policy precludes intimidation against employees who complain about anti-discrimination.

56. Alternatively, intimidation against employees who complain about discrimination is permitted by Robinson.

57. Robinson's Anti-discrimination Policy requires employees to report what they reasonably believe is a violation of the Anti-discrimination Policy.

58. Robinson's Anti-discrimination Policy precludes retaliation against employees who report a violation of the Anti-discrimination Policy.

59. Alternatively, retaliation against employees who report a violation of the Anti-discrimination Policy is permitted by Robinson.

60. Robinson's Anti-discrimination Policy precludes intimidation against employees who report a violation of the Anti-discrimination Policy.

61. Alternatively, intimidation against employees who report a violation of the Anti-discrimination Policy is permitted by Robinson.

62. The conduct reported in the Discrimination Complaint violates the Anti-Discrimination Policy.

63. Robinson has a policy to investigate reports of unsafe conditions.

64. Robinson has a policy to investigate reports of violations of its Anti-discrimination Policy.

65. An investigation should include interviewing the complainant.

66. An investigation should include interviewing the subject of the complaint.

67. An investigation should include interviewing the subject of the reported discrimination.

68. An investigation should include interviewing witnesses to the reported discrimination.

69. An investigation should include getting a written statement from the complainant.

70. An investigation should include getting a written statement from the subject of the complaint.

71. An investigation should include getting a written statement from the subject of the reported discrimination.

72. In response to Jackson's Discrimination Complaint, Robinson did not interview Jackson.

73. In response to Jackson's Discrimination Complaint, Robinson did not interview Colton.

74. In response to Jackson's Discrimination Complaint, Robinson did not interview witnesses.

75. In response to Jackson's Discrimination Complaint, Robinson did not get a written statement from Jackson.

76. In response to Jackson's Discrimination Complaint, Robinson did not get a written statement from Benjamin.

77. In response to Jackson's Discrimination Complaint, Robinson did not get a written statement from witnesses.

78. Robinson did not investigate Jackson's Discrimination Complaint.

79. On or about August 12, 2025, Colton asked Jackson a racist question, "What is your favorite snack, a banana?" ("Fourth Race Discrimination Comment")

80. The Fourth Race Discrimination Comment was a racist joke alluding to racist stereotypes comparing African Americans to monkeys.

81. Jackson filmed Colton making the Fourth Race Discrimination Comment.

82. On or about August 20, 2025, Colton made another racist comment to Jackson stating, "You know what those chains are good for? Taking black people out in the field to let them piss." ("Fifth Race Discrimination Comment")

83. Jackson filmed Colton making the Fifth Race Discrimination Comment.

84. Jackson was concerned for his safety.

85. On August 27, 2025, Colton used profanity toward Jackson.

86. On August 27, 2025, Colton used aggressive body language toward Jackson.

87. On August 27, 2025, Jackson told Colton to stop speaking to him in that manner.

88. On August 28, 2025, Robinson Construction terminated Jackson. ("Termination").

89. The Termination was delivered via email.

90. By refusing to listen to a report of racial harassment and discrimination, Robinson made it less likely for a reasonable employee to make a report of or oppose racial harassment.

91. By terminating Jackson's employment, Robinson made it less likely for a reasonable employee to make a report of or oppose conduct like racial harassment.

92. The Termination constitutes retaliation.

93. The Termination constitutes race discrimination.

94. Prior to the Termination, Jackson had never been disciplined.

95. Robinson has a progressive disciplinary policy ("Discipline Policy").

96. A verbal warning is the lowest level of discipline in the Discipline Policy.

97. Jackson did not receive a verbal warning before the Termination.

98. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

99. Jackson did not receive a written warning before the Termination.

100. A termination is the highest level of discipline in the Discipline Policy.

101. Robinson knowingly skipped progressive disciplinary steps in terminating Jackson's employment.

102. Robinson knowingly terminated Jackson's employment.

103. Robinson knowingly took an adverse employment action against Jackson.

104. Robinson knowingly took an adverse action against Jackson.

105. Robinson intentionally skipped progressive disciplinary steps in terminating Jackson's employment.

106. Robinson intentionally terminated Jackson's employment.

107. Robinson intentionally took an adverse employment action against Jackson.

108. Robinson intentionally took an adverse action against Jackson.

109. Robinson knew that skipping progressive disciplinary steps in terminating Jackson's employment would cause Jackson harm, including economic harm.

110. Robinson knew that terminating Jackson's employment would cause Jackson harm, including economic harm.

111. Robinson willfully skipped progressive disciplinary steps in terminating Jackson's employment.

112. Robinson willfully terminated Jackson's employment.

113. Robinson willfully took an adverse employment action against Jackson.

114. Robinson willfully took an adverse action against Jackson.

115. Upon information and belief, Robinson replaced Jackson with a Caucasian individual.

116. As a direct and proximate result of Defendants' conduct, Jackson suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e

117. Jackson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

118. Throughout his employment, Jackson was fully competent to perform his essential job duties.

119. Robinson treated Jackson differently than other similarly-situated employees based on his race.

120. Robinson violated 42 U.S.C. § 2000e *et seq.* by discriminating against Jackson due to his race.

121. On or about August 28, 2025, Robinson terminated Jackson's employment without just cause.

122. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

123. Robinson terminated Jackson's employment based on his race.

124. Robinson violated 42 U.S.C. § 2000e *et seq.* when it terminated Jackson's employment based on his race.

125. As a direct and proximate result of Robinson's conduct, Jackson has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.02(A)

126. Jackson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

127. Throughout his employment, Jackson was fully competent to perform his essential job duties.

128. Robinson treated Jackson differently than other similarly-situated employees based on his race.

129. Robinson violated R.C. § 4112.02(A) *et seq.* by discriminating against Jackson due to his race.

9

130. On or about August 28, 2025, Robinson terminated Jackson's employment without just cause.

131. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

132. Robinson terminated Jackson's employment based on his race.

133. Robinson violated R.C. § 4112.01 *et seq.* when it terminated Jackson's employment based on his race.

134. As a direct and proximate result of Robinson's conduct, Jackson has suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT III:  RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e

135. Jackson restates each and every prior paragraph of this Complaint as if it were fully restated herein.

136. Pursuant to 42 U.S.C. § 2000e, it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

137. As a result of Robinson's discriminatory conduct described above, Jackson opposed being the recepeint of racist comments.

138. As a result of Robinson's discriminatory conduct described above, Jackson reported being called racial slurs to Robinson's human resources.

139. After Jackson opposed being called racial slurs, Robinson removed Jackson from his assignment at Robinson.

140. Robinson's actions were retaliatory in nature, based on Jackson's opposition to the unlawful discriminatory conduct.

10

141. Robinson violated 42 U.S.C. § 2000e by retaliating against Jackson due to his opposition to racial discrimination.

142. As a result of Robinson's discriminatory conduct described above, Jackson reported being called racial slurs to Robinson.

143. After Jackson reported being called racial slurs, Robinson terminated Jackson's employment.

144. Robinson's actions were retaliatory in nature, based on Jackson's opposition to the unlawful discriminatory conduct.

145. Robinson violated 42 U.S.C. § 2000e by retaliating against Jackson due to his opposition to racial discrimination.

146. As a direct and proximate result of Defendants' conduct, Jackson suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4112.02(I).

147. Jackson restates each and every prior paragraph of this Complaint as if it were fully restated herein.

148. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

149. As a result of Robinson's discriminatory conduct described above, Jackson opposed being the recepeint of racist comments.

150. As a result of Robinson's discriminatory conduct described above, Jackson reported being called racial slurs to Robinson's human resources.

151. After Jackson opposed being called racial slurs, Robinson removed Jackson from his assignment at Robinson.

11

152. Robinson's actions were retaliatory in nature, based on Jackson's opposition to the unlawful discriminatory conduct.

153. Robinson violated R.C. § 4112.02(I) by retaliating against Jackson due to his opposition to racial discrimination.

154. As a result of Robinson's discriminatory conduct described above, Jackson reported being called racial slurs to Robinson.

155. After Jackson reported being called racial slurs, Robinson terminated Jackson's employment.

156. Robinson's actions were retaliatory in nature, based on Jackson's opposition to the unlawful discriminatory conduct.

157. Robinson violated R.C. § 4112.02(I) by retaliating against Jackson due to his opposition to racial discrimination.

158. As a direct and proximate result of Defendants' conduct, Jackson suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT V: HOSTILE WORK ENVIRONMENT ON THE BASIS OF RACE DISCRIMINATION

159. Jackson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

160. During his employment with Robinson, Jackson was subjected to offensive and harassing conduct by Defendants based on his race.

161. Defendants knew or should have known of the harassing conduct against Jackson by Robinson's employees.

162. Defendants condoned, tolerated, and ratified this harassing conduct.

163. This harassing conduct was severe and/or pervasive.

164. This harassing conduct was offensive to Jackson.

165. This harassing conduct interfered with Jackson's ability to perform his job duties.

166. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Jackson.

167. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Jackson.

168. As a direct and proximate result of Defendants' conduct, Jackson suffered and will continue to suffer damages, including economic and emotional distress damages.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Jackson respectfully requests that this Honorable Court grant the following relief:

(a)  Issue a permanent injunction:

    (i)       Requiring Robinson to abolish discrimination, harassment, and retaliation;

    (ii)     Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v)     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against Defendant of compensatory and monetary damages to compensate Jackson for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Jackson's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Trisha Breedlove
Trisha Breedlove (0095852)
Mark August (0105586)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: mark.august@spitzlawfirm.com
*Attorneys for Plaintiff Thomas Jackson*

## JURY DEMAND

Plaintiff Jackson demands a trial by jury by the maximum number of jurors permitted.

/s/ Trisha Breedlove
Trisha Breedlove (0095852)
Mark August (0105586)